### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | | |
|---|---|---|---|
| **HEIDI GROVER,** | ) | | |
| | ) | | |
| **Plaintiff** | ) | | |
| | ) | | |
| **v.** | ) | **No. 2:15-cv-204-JHR** | |
| | ) | | |
| **CAROLYN W. COLVIN,** | ) | | |
| **Acting Commissioner of Social Security,** | ) | | |
| | ) | | |
| **Defendant** | ) | | |

### MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand contending that the administrative law judge erred in (i) finding, for purposes of the application of the so-called "Grid," Appendix 2 to Subpart P, 20 C.F.R. § 404, that the plaintiff's nonexertional limitations did not significantly erode the occupational base, in circumstances in which she failed to specify the numbers in which three cited jobs existed, and (ii) improperly evaluating opinions of treating sources Deborah Como-Kepler, Psy.D., and Sarah Davis, M.D. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 18, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 13.

Errors") (ECF No. 7) at 3-6. I conclude that remand is warranted on the basis of the first point of error. For the benefit of the parties on remand, I also address the second point of error, which does not warrant remand.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, Finding 1, Record at 18; that she had severe impairments of a history of alcohol abuse, anxiety, essential tremor, chronic urticaria, and allergic rhinitis, Finding 3, *id*. at 19; that she had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was limited to simple jobs with simple instructions, needed to avoid all exposure to temperature extremes and concentrated exposure to fumes, odors, dust, gases, and poor ventilation, was precluded from performing fine work with her hands due to her essential bilateral upper extremity tremor, could not climb ladders, ropes, or scaffolds, and needed to avoid exposure to hazards such as unprotected heights and moving machinery, Finding 5, *id*. at 21; that, considering her age (44 years old, defined as a younger individual, on her alleged disability onset date, July 1, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 26-27; and that she, therefore, had not been disabled from July 1, 2010, through the date of the decision, December 5, 2013, Finding 11, *id*. at 27. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Application of Grid

Use of the Grid is appropriate when a rule accurately describes an individual's capabilities and vocational profile.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983).  When a claimant's impairments involve only limitations related to the exertional requirements of work, the Grid provides a "streamlined" method by which the commissioner can meet her burden of showing that there is other work a claimant can perform.  *See, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir. 1991).  However, in cases in which a claimant suffers from nonexertional as well as exertional impairments, the Grid may not accurately reflect the availability of other work he or she can do.  *See, e.g., id.* at 996; *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).  Whether the commissioner may rely on the Grid in these circumstances depends on whether a nonexertional impairment "significantly affects [a] claimant's ability to perform the full

3

range of jobs" at the appropriate exertional level. *Id.* (citation and internal quotation marks omitted). If a nonexertional impairment is significant, the commissioner generally may not rely on the Grid to meet her Step 5 burden but must employ other means, typically use of a vocational expert. *See, e.g., id.*

Even in cases in which a nonexertional impairment is determined to be significant, however, the commissioner may yet rely exclusively upon the Grid if "a non-strength impairment . . . has the effect only of reducing that occupational base marginally[.]" *Id.* "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ [administrative law judge] must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

The administrative law judge found that the plaintiff's nonexertional limitations did not result in significant erosion of the occupational base, explaining:

> Social Security Ruling 85-15 [("SSR 85-15")] sets forth that the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the occupational base. Such is not the case here, as the [plaintiff] is capable of simple, unskilled work and all other basic mental skills described in this ruling are intact. The[] undersigned also takes note of Social Security Ruling 83-14 [("SSR 83-14")], which notes that environmental restrictions and other non-exertional limitations like the ones described in the [plaintiff's] residual functional capacity have little effect [o]n the occupation[al] base in the absence of any exertional limitations. Accordingly, the undersigned concludes that the [plaintiff] would be capable of performing a wide range of jobs, including for example, surveillance system monitor, call-out operator and school bus monitor.

Record at 27 (citation omitted). She stated that a finding of "not disabled" was, therefore, appropriate under the framework of section 204.00 of the Grid. *See id.* As the commissioner observes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition")

(ECF No. 8) at 3, section 204.00 of the Grid pertains to claimants who retain the exertional capacity to perform heavy or very heavy work, *see* Grid § 204.00 ("[A]n impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.").

The plaintiff correctly notes that the administrative law judge failed either to provide numbers for the specific jobs cited or, alternatively, demonstrate that the plaintiff's combination of impairments had only a negligible impact on the occupational base, permitting reliance on the Grid as a framework. *See* Statement of Errors at 3-4; Record at 27. Accordingly, the commissioner fails to meet her Step 5 burden of demonstrating that the plaintiff is capable of performing jobs existing in significant numbers in the national economy.

The plaintiff complains that the sole authority on which the administrative law judge relied for the proposition that none of her physical nonexertional impairments had more than a negligible impact on the occupational base, SSR 83-14, does not even apply to the upper extremity limitations found, which the plaintiff contends "are particularly significant in combination with other nonexertional limitations found[.]" Statement of Errors at 3.

At oral argument, her counsel protested that, in violation of the so-called *Chenery* rule, the commissioner relied on authorities not cited by the administrative law judge, including SSR 85-15 for the proposition that her upper extremity limitations had no more than a negligible impact on the occupational base. *See* Opposition at 5-6; *see also Day v. Astrue,* No. 1:12-cv-141-DBH, 2012 WL 6913439, at *10 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd,* Jan. 18, 2013) (pursuant to *SEC v. Chenery Corp.,* 332 U.S. 194 (1947), "a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually

articulated by the agency decision-maker") (citation and internal quotation marks omitted).  He argued that, in any event, the *post hoc* citation to SSR 85-15 was unavailing.

I conclude that, even assuming *arguendo* that there is no *Chenery* problem, the commissioner's reliance on SSR 85-15 does not save the decision.

SSR 85-15 provides, in relevant part:

> *Reaching*, *handling*, *fingering*, *and feeling* require progressively finer usage of the upper extremities to perform work-related activities.  Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs.  Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do.  Varying degrees of limitations would have different effects, and the assistance of a VS [vocational specialist] may be needed to determine the effects of the limitations.  "Fingering" involves picking, pinching, or otherwise working primarily with the fingers.  It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion.  As a general rule, limitations of fine manual dexterity have greater adjudicative significance – in terms of relative numbers of jobs in which the function is required – as the person's exertional RFC decreases.  Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work.  The varying degrees of loss which can occur may require a decision-maker to have the assistance of a VS.  However, a VS would not ordinarily be required where a person has a loss of ability to feel the size, shape, temperature, or texture of an object by the fingertips, since this is a function required in very few jobs.

SSR 85-15, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991, at 350-51.

At oral argument, counsel for the commissioner explained that the commissioner asks the court to interpret the above language as defining "fine manual dexterity" as the "ability to feel the size, shape, temperature, or texture of an object by the fingertips[.]"  *Id*. at 351.  He noted that, if the court agreed, it would be clear that the plaintiff's inability to perform fine work resulted in no significant erosion of the occupational base at any exertional level.  *See also* Opposition at 5.  He acknowledged that the commissioner had been unable to find any caselaw indicating whether this was, or was not, the correct reading of the ruling.

6

He noted that, in the alternative, the commissioner argues that because the plaintiff was found capable of performing work at the medium, heavy, and very heavy exertional levels, her inability to perform work necessitating fine manual dexterity "can safely be assumed to not significantly erode her access to work at those levels – although the same might not be the case had the ALJ found her limited to only light or sedentary work."  *Id*. at 5-6.

With respect to the first argument, I conclude that SSR 85-15 cannot reasonably be construed to define "fine manual dexterity" to encompass solely the ability to feel.  To the contrary, the ruling states that reaching, handling, fingering, and feeling "require *progressively finer* usage of the upper extremities to perform work-related activities[,]" SSR 85-15 at 350 (emphasis added), suggesting that each of those activities requires at least some level of fine usage, *see also, e.g., Farley v. Astrue*, No. 8:06-CV-2342-T-MAP, 2008 WL 360832, at *2 n.4 (M.D. Fla. Feb. 8, 2008) (rejecting, as "flawed," commissioner's argument that claimant's limitation to occasional use of her hands for fine manual dexterity would not limit her ability to perform handling/gross manipulation; noting, "SSR 85-15 sets forth that both handling and fingering require 'fine motor dexterity' albeit to varying degrees.").  In addition, while the ruling does indicate that reaching and handling are in a category requiring less fine manual dexterity, it makes clear that *both* fingering and feeling are in a category requiring more.  *See, e.g., Delgadillo v. Astrue*, No. CV 11-5998 AJW, 2012 WL 2005546, at *3 (C.D. Cal. June 4, 2012) (quoting SSR 85-15 for the proposition that fingering, which means "picking, pinching, or otherwise working primarily with the fingers[,]" is synonymous with "fine manipulation" or "fine manual dexterity").

The commissioner's second basis for affirmance is equally unavailing.  *Seavey* makes clear that the commissioner cannot assume that nonexertional limitations have only a negligible effect on the relevant occupational base: she must back such a finding "with the evidence to substantiate

it, unless the matter is self-evident." *Seavey,* 276 F.3d at 7 (citation and internal quotation marks omitted). As the plaintiff's counsel emphasized at oral argument, his client was found to have a complete preclusion against fine work with the hands. The degree to which such a limitation would erode the occupational base for even medium, heavy, and very heavy work is not self-evident, particularly given that, as noted above, SSR 85-15 indicates that even reaching and handling require some degree of fine usage of the hands. In addition, as the plaintiff's counsel pointed out at oral argument, the commissioner argued that one of his client's additional nonexertional limitations, the need to avoid all exposure to temperature extremes, had little impact on the sedentary occupational base, *see* Opposition at 5, suggesting that it did have more than a negligible effect on higher exertional-level jobs. The plaintiff's counsel noted that, in effect, the commissioner had acknowledged that his client's upper extremity limitation impacted the sedentary and light occupational base, while her temperature limitation impacted the medium and heavier occupational base.

In the absence of vocational testimony clarifying the extent to which the plaintiff's combined nonexertional impairments eroded the occupational base, or providing the job incidence for the specific jobs the administrative law judge stated that the plaintiff was capable of performing, her Step 5 finding was unsupported by substantial evidence, necessitating remand.[2]

---

[2] As it happens, SSR 83-14 does address the impact of upper extremity limitations on the occupational base. *See* SSR 83-14, reprinted in West's Social Security Reporting Service Rulings 1983-1991, at 43, 46-47. However, it makes some of the same points that were later made in SSR 85-15. *See id.* at 43 (stating that, "[a]t all exertional levels, a person must have certain use of the arms and heads [sic] to grasp, hold, turn, raise, and lower objects" and that "[m]ost sedentary jobs require good use of the hands and fingers"), 46 (observing that, "as in light work, most unskilled medium jobs require gross use of the hands to grasp, hold, and turn objects rather than use of the fingers for fine movements of small objects" and that, "[a]s in light work, inability to use the finger tips to sense the temperature or texture of an object is an example of a nonexertional limitation which would have very little effect on the potential unskilled medium occupational base"). Thus, the administrative law judge's reliance on SSR 83-14 is unavailing for the same reasons as the commissioner's reliance on SSR 85-15.

## B.  Treatment of Treating Sources

The plaintiff secondly complains that the administrative law judge improperly rejected the opinion of her counselor, Dr. Como-Kepler, that she could not respond appropriately to work stress and the opinion of her primary care physician, Dr. Davis, that her concentration was sufficiently impaired and her anxiety sufficiently uncontrolled that Dr. Davis recommended outpatient/partial hospitalization treatment.  *See* Statement of Errors at 4-5; *see also* Record at 307, 562, 604.  I find no error.

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]"  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors.  *See id.*[3] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing.  *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").  Slavish discussion of the relevant factors is not

---

[3] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

required.  *See, e.g., Golfieri v. Barnhart,* No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

## 1.  Como-Kepler Opinion

With respect to Dr. Como-Kepler, the administrative law judge stated:

The record does contain two notes from Deborah Como-Kepler, Psy.D[.] dated May 14, 2012 and February 2, 2013, which both state that the [plaintiff] cannot respond appropriately to work stress.  In her most recent correspondence, she states that she last saw the [plaintiff] on January 31, 2013 and her appearance was "deteriorated" and she appeared "stressed."  At this time, the [plaintiff] was experiencing family discord, housing issues and financial hardship.  She complained of difficulty thinking clearly, anxiety and few social supports.  Dr. Como-Kepler described her as "tangential and disorganized" with "pressured and rapid speech."  She continued to abuse alcohol, "drinking 4 beers a night."  Dr. Como-Kepler concluded that, "if [she] can stay sober and get the appropriate medication, housing and support she will be able to function again."  She opined that this would take one year and that at this time, she felt the [plaintiff] could not "respond appropriately to work pressure."

While this note appears to have been written in support of the [plaintiff's] application for disability benefits, it is not entitled to persuasive weight for several reasons.  First, there are absolutely no treatment records from Dr. Como-Kepler to support her opinion.  Second, she states clearly that the [plaintiff's] alcohol abuse is a primary contributing factor to her difficulties.  Third, her observations are not documented elsewhere in the record, in terms of the severity of the [plaintiff's] symptoms.  Finally, she does not identify the nature of her relationship with the [plaintiff], how long she has been treating her, or what her response has been to treatment.  For these reasons, this note is of very limited probative value.  Moreover, it is not corroborated by the mental health records that are included in the record, as summarized below.

*Id.* at 24 (citations omitted).

The plaintiff argues that none of these reasons sufficed to reject the Como-Kepler opinion because (i) the absence of office records is not a sufficient reason to reject an opinion, (ii) alcohol use is not a valid basis for rejecting a treating source opinion but, rather, must be evaluated pursuant to the protocol set forth in Social Security Ruling 13-2p ("SSR 13-2p"), (iii) Dr. Como-Kepler's observations are consistent with those of Dr. Davis and treating psychiatrist Julie K. Pease, M.D., who continued to record a very low Global Assessment of Functioning ("GAF")

score of 47, consistent with an inability to work, and (iv) it is clear that Dr. Como-Kepler is the plaintiff's counselor.  *See* Statement of Errors at 5.[4]

As an initial matter, as the commissioner points out, *see* Opposition at 10, it does not appear that the administrative law judge deemed Dr. Como-Kepler a "treating source," *see* Record at 24; that is, the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [her], or has provided [her], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [her,]" 20 C.F.R. §§ 404.1502, 416.902.  There were no underlying treatment notes corroborating such a relationship.

In any event, even assuming that Dr. Como-Kepler was a "treating source," the administrative law judge supplied good reasons for the rejection of her opinion.  The absence of Dr. Como-Kepler's treatment notes hampered the administrative law judge's ability to evaluate several factors relevant to the assessment of the weight to be given a treating source's opinion: (i) examining relationship, (ii) treatment relationship, including length of the relationship, frequency of examination, and nature and extent of the relationship, and (iii) whether the opinion was consistent with the record as a whole, including Dr. Como-Kepler's own treatment notes.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  That weighed against adoption of the opinion.

---

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR").  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning."  *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34.  A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (boldface omitted).  In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores.  *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").  Nonetheless, I assess the supportability of the administrative law judge's decision based on the evidence available to her at that time.

The administrative law judge also reasonably viewed the fact that Dr. Como-Kepler attributed the plaintiff's difficulties primarily to alcohol abuse as counseling against the adoption of the opinion.  As the commissioner observes, *see* Opposition at 12, a claimant is barred from receiving SSD or SSI benefits if alcohol abuse is a contributing factor material to the determination of disability, *see, e.g.*, 20 C.F.R. §§ 404.1535, 416.935; SSR 13-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015), at 479-95.  The administrative law judge was not obliged to undergo the materiality analysis required if a claimant is found disabled, *see, e.g., id.*, in order to make the common-sense judgment that Dr. Como-Kepler's opinion likely would not support a finding of disability as a matter of law.

Finally, the administrative law judge supportably deemed the Como-Kepler opinion uncorroborated by the mental health treatment notes of record.  As the administrative law judge observed, *see* Record at 24-25, Dr. Pease's notes revealed gradual improvement in the plaintiff's anxiety over an eight-month treatment period, *see, e.g., id.* at 629 (as of August 8, 2013, plaintiff's anxiety was adequately managed, although her depression was failing to improve due to psychosocial stressors), *id.* at 614 (as of October 15, 2013, some stressors were noted to have resolved), *id.* at 612 (as of November 13, 2013, plaintiff's anxiety appeared to be "under better control").  During the plaintiff's visits through August 8, 2013, on mental status examination, Dr. Pease noted impaired attention and concentration, *see id.* at 628, 632, 638; thereafter, she noted intact attention and concentration, *see id.* at 611, 615, 619, 623.  Dr. Pease otherwise recorded largely normal mental status examinations, although the plaintiff consistently presented as alert and guarded, with an anxious and/or depressed mood, *see, e.g., id.* at 611, 615, 619, 623, 627-28, 632, 638-39.  That Dr. Pease consistently assessed a GAF score of 47 did not invalidate the administrative law judge's finding of inconsistency.  *See, e.g., LeBlanc v. Colvin,* No. 2:13-cv-

348-JDL, 2014 WL 5431567, at *4 (D. Me. Oct. 24, 2014) (observing that "[a] GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions" and that "a GAF score is nothing more than a snapshot of a particular moment") (citations and internal quotation marks omitted).

## 2.  Davis Opinion

With respect to Dr. Davis, the administrative law judge stated:

Finally, the record contains a note from primary care physician Sarah Davis, M.D. dated March 27, 2013.  Dr. Davis states that the [plaintiff] is treated for several medical conditions – namely, urticaria (hives), allergic rhinitis, mild intermittent asthma, essential tremor, depression, anxiety and alcohol use.  She notes that none of the [plaintiff's] physical ailments are disabling, but that her mental health issues are "most disruptive to her ability to function."  However, the only evidence she sets forth in support of this statement is the March 2013 note from Dr. Pease indicating impaired concentration.  She then goes on to note the [plaintiff] has "significant social and financial challenges" and describes [the plaintiff's] anxiety as "uncontrolled."  She concludes by stating that in the past few months, she recommended the [plaintiff] seek inpatient treatment.

The note of Dr. Davis is not persuasive.  First and foremost, Dr. Davis is not a mental health professional.  While her observations as a primary treating physician are certainly of value, the actual treatment records do not support her statements. Second, the only functional impairment cited by Dr. Davis is impaired concentration.  She does not describe any other work-related limitations and she also fails to explain how severe the [plaintiff's] impairment is or how significantly it would limit her in an occupational setting.  Third, Dr. Davis' note cites the March 2013 progress note of Dr. Pease in support of her opinion; but the most recent note[s] from Dr. Pease actually reflect significant improvement in the [plaintiff's] anxiety over the course of the ensuing eight months since Dr. Davis wr[o]te this note.  Fourth, Dr. Davis' statement that the [plaintiff] has significant social and financial challenges is not a statement of disability.  Finally, the fact that Dr. Davis recommended she seek inpatient mental health care [is] of limited value given that the [plaintiff] never did so and has remained stable.

The undersigned finds the opinion of Dr. Davis conclusory and against the weight of the record as a whole.  The conclusions reached by this physician are not supported by medically acceptable signs, symptoms, and/or laboratory findings, and further appear to be based totally on the [plaintiff's] subjective complaints and out of proportion to the objective evidence obtained during and for the course of treatment.  There are no treatment records to substantiate such degrees of limitation. The undersigned has evaluated this evidence and finds that even though the report

is from a treating source, Dr. Davis' opinion is inconsistent and not supported by the medical evidence as a whole.  Therefore, this medical source statement is more akin to an advocacy opinion and thus is accorded little weight.

*Id*. at 25 (citations omitted).

The plaintiff argues that none of these reasons for rejecting the Davis opinion is adequate in that "[t]he fact that she is not specifically a mental health practitioner is not a sufficient reason, and the other reasons stated are addressed above."  Statement of Errors at 5.

As the commissioner rejoins, *see* Opposition at 13, the fact that Dr. Davis was not a mental health practitioner was a valid reason for assigning less weight to her opinion regarding the impact of the plaintiff's mental impairments on her ability to function, *see, e.g.*, 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

The plaintiff does not explain why the administrative law judge's remaining reasons for rejecting the opinion are inadequate.  In any event, as the commissioner argues, *see* Opposition at 13-15, they are adequate.

First, that Dr. Davis did not assess specific functional limitations was a good reason to discount her opinion.  As the commissioner points out, *see id.* at 14-15, it is not even clear that the Davis opinion is inconsistent with the assessed limitation to simple jobs with simple instructions, derived from the opinion of agency nonexamining consultant Leigh Haskell, Ph.D., *see* Record at 25-26, 122-24.

Second, the administrative law judge supportably deemed the Davis opinion inconsistent with other evidence of record, including her own notes.  Dr. Davis's notes, as well as those of other providers at the same practice, reflect that the plaintiff was generally alert and cooperative, with normal mood, affect, attention span, and concentration, and she asked and answered questions

14

appropriately, although she intermittently demonstrated easy distraction and/or poor concentration. *See, e.g., id.* at 311, 319, 324, 327, 330, 342, 344, 352, 356, 360, 362, 364, 370, 403, 423, 437, 522, 543, 546.

Third, the administrative law judge reasonably found that, although Dr. Davis relied on a March 25, 2013, treatment note of Dr. Pease, Dr. Pease's later records revealed improved functioning, undercutting the validity of the Davis opinion.

Fourth, the administrative law judge's remaining reasons for rejecting the Davis opinion are, on their face, good reasons for doing so: that having significant social and financial challenges is not necessarily indicative of a disability and that, while Dr. Davis was concerned enough to recommend that the plaintiff seek inpatient care, she did not do so and remained stable.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **VACATED**, and the case is **REMANDED** for further proceedings consistent herewith.

Dated this 14th day of January, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge